### THE STATE EX REL. P. H. CLEMENTS v. M. C. HUMPHRIES.

#### No. 7136.

1. **Quo Warranto.**—If the offer of a candidate for office pending his election not to charge ex officio compensation to which he would be entitled if elected, and that he would serve for his fees of office, should be construed into an offer to bribe electors, he could not after being declared elected, and after entering upon the duties of the office, be removed therefrom until after his conviction of such bribery by a court of competent jurisdiction, in a proceeding instituted and prosecuted according to the provisions of the Code of Criminal Procedure.

2. **Same.**— Neither under the statute nor common law can one who has been declared elected to an office, and who has entered upon the discharge of its duties, be deprived thereof for bribery until he has been convicted of that offense.

APPEAL from Mills. Tried below before Hon. W. A. Blackburn.

The opinion states the case.

*J. L. Lewis* and *Dan H. Triplett,* for appellant.—The pleading and the evidence showing that respondent is holding and executing said office; that the ex officio pay thereof is worth one hundred and fifty dollars per annum; that a number of the qualified voters of said Mills county are also tax payers, and especially the six voters shown to have been influenced by the promises contained in the alleged circular; that said promises were calculated to and in point of fact did corrupt the ballot in this

instance, being a distinct proposition on respondent's part that if elected to said office he would discharge the duties thereof for less compensation than allowed by law, and would in effect donate directly to the treasury of said county and through it to such of the voters of said county as were also tax payers the sum in the aggregate of $150 per annum; the court should have held that he was disqualified and ineligible to hold said office and rendered judgment of ouster against him. Const., art. 16, sec. 1; Rev. Stats., arts. 1144, 4098a, Quo Warranto Act; 36 Am. Rep., 222; 20 Am. Rep., 746; 17 Am. Rep., 485; 37 Am. Rep., 416.

*Uvalde Burns* and *J. R. Cowles*, for appellee.

GAINES, ASSOCIATE JUSTICE.—This was an information in the nature of a quo warranto filed in the name of the State upon the relation of P. H. Clements, for the purpose of ousting the appellee from the office of the clerk of the County Court of Mills County.

It was alleged and proved that at the general election held in the county named on the 6th of November, 1888, the relator, the respondent, and one J. A. Price were candidates for the office of county clerk, and that afterwards on the 12th day of the same month the Commissioners Court of the county, sitting as a returning board, canvassed the returns and declared the result as follows: That relator had received 349 votes, respondent had received 367 votes, and that Price had received 92 votes. It was also alleged and proved that in order to influence the voters of the county in his favor the respondent before the election caused to be printed and circulated among them a document, a copy of which is as follows:

" *To the Voters of Mills County:*   As I have been unable to make such a canvass as was necessary to inform you in person of my views on the question of ex officio services, I beg leave by this method to say that if elected to the office of county clerk I will serve for the fees of the office, and without ex officio pay.

[Signed]                                    "M. C. HUMPHRIES."

It was also alleged that twenty-seven voters whose names are given were influenced by the promises contained in the circular to vote for respondent. The jury found the facts as alleged, except that they found that only six voters were influenced by the circular to vote for respondent, which was not a sufficient number to have changed the result. The court gave a judgment upon the verdict for respondent.

Does the fact that the respondent held out a promise to the voters of the county to serve in case of election for a less compensation than the lawful fees of the office disqualify him for holding it? Section 1 of article 16 of our Constitution requires every officer before he enters upon the duties of his office to take an oath or affirmation which embraces the following language: "And I furthermore solemnly swear (or affirm) that I have not

directly nor indirectly paid, offered, or promised to pay, contributed nor promised to contribute any money or valuable thing, or promised any office or employment as a reward for the giving or withholding a vote at the election at which I was elected." It may be that an offer by a candidate for county clerk to remit in case of his election his fees for ex officio services should be deemed an offer to contribute to each tax payer his proportion of the taxes necessary to raise the sum so remitted.

In Caruthers v. Russell, 53 Iowa, 346 (S. C., 36 Am. Rep., 222), the Supreme Court of Iowa held such a promise virtually an offer to bribe the voters, and it seems to be within the spirit if not the letter of the constitutional provision above quoted. But it does not follow that in the absence of some other constitutional or statutory provision that a candidate who has made such promise and has received the highest number of votes and has taken the required oath can be removed from office by the mere proof of the fact in the proceeding in which he is sought to be ousted.

The case of The Commonwealth v. Jans, 10 Bush, 725, is an authority bearing upon the question. The Constitution of Kentucky requires every person before accepting office to take an oath that he has not fought a duel or sent or accepted a challenge to fight a duel. In this respect the oath is practically the same as that required by our Constitution. Like ours that Constitution also contained the further provision which declared that any one who had fought a duel or sent or accepted a challenge should be disqualified from holding office. In the case cited it was held that a party who had been elected to an office and who had qualified by taking the prescribed oath could not be deprived of his office until he had been legally convicted of the offense of having sent a challenge in a proper criminal proceeding upon an indictment charging him with that offense. From the rule so established it would follow that if section 1 of article 16 stood as the only provision upon this subject, and if it should be construed to embrace within its terms the act complained of in this proceeding, the respondent could not be deprived of his office upon this ground until he had been lawfully indicted and convicted of the offense.

But we need not go so far. The Constitution has another provision upon this matter. Section 5 of the article already cited provides "that every person shall be disqualified from holding any office of profit or trust in this State who shall be convicted of having given or offered a bribe to procure his election or appointment." If therefore it should be held that the act of the respondent was within the meaning of the law an offer to bribe the voters, it follows from the section quoted that he could not be deprived of the office until he had been convicted of the offense in a court of competent jurisdiction in a proceeding instituted and prosecuted according to the provisions of our Code of Criminal Procedure.

We conclude that our Constitution does not warrant the removal of the respondent from office for the act charged against him in a proceeding of this character before a legal conviction of the offense.

We come then to the question whether or not the election in this case should be held void at common law. In Greenhood on Public Policy, p. 341, it is said: "So far has the doctrine which prohibits anything that might influence the selection of public officers from other considerations than that of personal merit been carried that an election secured by a promise on part of a candidate to perform the duties of the office to which he aspires, if elected, for less than the legal fees or salary is void."

The same doctrine is recognized in McCrary on Elections, third edition, section 181. If the learned authors mean to assert that an election so procured is void, without reference to the question whether or not a sufficient number of voters were induced by the promise to vote for the successful candidate to have changed the result, they are not supported by the authorities which they cite.

In Caruthers v. Russell, *supra*, the Iowa court held that a promise by a candidate to pay into the treasury if elected all the fees of his office in excess of one thousand dollars rendered him ineligible; but the decision is expressly based upon the provisions of a statute of that State.

In The State v. Purdy, 36 Wisconsin, 213 (S. C., 20 Am. Rep., 485), it was decided merely that the votes which were procured by a similar promise should be rejected. To the same effect was Hopkins v. Olin, 23 Wisconsin, 327.

The State v. Collier, 72 Missouri, 13 (S. C., 37 Am. Rep., 416), the information charged that a like promise had been made and that a sufficient number of votes had been influenced thereby to change the result. The court held that a demurrer to the information was improperly sustained, but it did not hold either that the election was void or that the candidate was disqualified.

In Tucker v. Acken, 7 New Hampshire, 113, the selectmen of a town had put up the office of collector of taxes to the lowest bidder, and his right to the office was collaterally brought into question in the suit. It was held that the question could not be determined in a collateral proceeding.

In Hall v. Garett, 18 Indiana, 390, it was decided that the sale by a sheriff of the office of deputy was void, and that a bond given as a part of the bargain by the deputy to the sheriff for the faithful performance of his duties was also void.

There are some other cases cited, but these approach most nearly the question, and it is clear that none of them hold that an election procured by a promise such as is alleged in the information in this case is void, or that in the absence of a written law the incumbent so elected can be ousted for that reason alone. We are constrained therefore to

hold that neither under our Constitution nor by the common law can the respondent be deprived of the office he holds under the allegations and proof made in this case.

In so deciding we declare what we think the law to be and not what we think it ought to be. It is a matter for the Legislature to fix the fees and emoluments of all officers to the end that honest, capable, and efficient persons may aspire to and be chosen to fill them. To permit a candidate, in order to influence the voters, to hold out a promise that he will serve in case of election for less than the fees or salary fixed by law is to thwart the will of the Legislature and to defeat the object of the law.

It is unjust to honest aspirants who rely upon their merits for political preferment, and tends to degrade the public service by making the offices not the reward of official capacity and honorable conduct, but the prey of those who by reason of incapacity to earn a livelihood in the common pursuits of life are willing to undertake the duties of the public service for a less sum than the Legislature has deemed an adequate compensation for the work. It puts up the offices of the State to the lowest bidder, and conduces to influence the voters to lose sight of the personal fitness of the respective candidates, and to be governed by considerations of a false economy. It is a gratifying consideration that this practice has been of such infrequent occasion in our State that the Legislature has not felt called upon to pass a statute in aid of the Constitution more effectually to remedy the evil. Since the Constitution only executes itself in so far as it appeals to the conscience of the candidate and subjects him to the chances of an indictment for perjury by requiring of him an official oath, it would seem that the additional legislation upon this matter is called for to the extent at least of making the issuing of a circular such as is shown in this case to be disqualification to hold the office to which the candidate aspires.

Since it appears by the verdict of the jury in the case before us that only six voters were influenced by the circular in question to vote for respondent—not enough to have changed the result—it is unnecessary for us to decide whether such votes should have been rejected or not. Some of the authorities heretofore cited hold that they should be rejected. But it occurs to us that it may be a dangerous rule which in any case permits one or more voters to change the result of an election by testifying to a matter which rests solely in their own breasts, and which from its very nature hardly admits of any rebutting proof. But we give no opinion upon the question.

What we have said in condemnation of the practices resorted to by the respondent in the election is not aimed at him personally. His motives may have been conscientious and for what he considered to be for the public good. That the voters of the county so regarded them is indicated by

the fact that a plurality uninfluenced by his circular gave him their suffrage.

There is an assignment of error predicated upon the court's ruling on an exception to the answer, but we think it not well taken.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered June 25, 1889.