

**PRICE DANIEL**
ATTORNEY GENERAL

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS     *See art 3912 K*

February 4, 1947    *Sec. 8*

Honorable Clayton Bray,
County Attorney, Sutton County,
Sonora, Texas

<u>Overrules where conflicts:
0-1896, 0-6372, and 0-4420</u>

Opinion No. V-20

Re: Whether or not a daughter
of the Sheriff may serve
as deputy without pay. And
a related question.

Dear Sir:

Your request for an opinion upon the above titled subject matter is as follows:

"Will you advise as to whether the Nepotism Statute, or any other prohibition statute, precludes a sheriff from making the following appointments:

"(1)  A daughter to be Deputy without pay. If she may not be a Deputy without pay, may she assist in the office as a voluntary worker?

"(2)  A husband of an already appointed Office Deputy, said husband to be a Deputy without pay.

"Obviously, the appointment of a Deputy without pay would be to the advantage of the Sheriff as it would enable him to discharge the duties of his office with a minimum expense, however, I am quizzical about the sanctity of the public records of the Sheriff's duties as a Tax Assessor and Collector, and about the usual authority of a deputy to do all things his principal might do, even though the deputy serves without pay."

Article 3902 of the Revised Civil Statutes as far as pertinent is as follows:

"Whenever any district, county or precinct officer shall require the services of deputies, assistants or clerks in the performance of his

duties he shall apply to the County Commissioners
Court of his county for authority to appoint such
deputies, assistants or clerks, stating by sworn
application the number needed, the position to
be filled and the amount to be paid. Said appli-
cation shall be accompanied by a statement showing
the probable receipt from fees, commissions and
compensation to be collected by said office dur-
ing the fiscal year and the probable disbursements
which shall include all salaries and expenses of
said office, and said court shall make its order
authorizing the appointment of such deputies, as-
sistants and clerks and fix the compensation to be
paid them within the limitations herein prescribed
and determine the number to be appointed as in the
discretion of said court may be proper; provided
that in no case shall the Commissioners' Court or
any member there attempt to influence the appoint-
ment of any person as deputy, assistant or clerk in
any office. Upon the entry of such order the offi-
cers applying for such assistants, deputies  or
clerks shall be authorized to appoint them; provid-
ed that said compensation shall not exceed the max-
imum amount hereinafter set out. The compensation
which may be allowed to the deputies, assistants or
clerks above named for the services shall be a rea-
sonable one, not to exceed the following amounts:

"1. In counties having a population of twenty-
five thousand (25,000) or less inhabitants, first
assistant or chief deputy not to exceed eighteen
hundred ($1800) dollars per annum; other assistants,
deputies or clerks not to exceed fifteen hundred
($1500) dollars per annum each. * * *"

This bracket provision applies to Sutton County.

A deputy sheriff is a public officer as contra-
distinguished from a mere employee of the sheriff, and is charged
with the performance of certain governmental functions. The
office is created by law. The appointment of such deputy is reg-
ulated by law. To become a deputy sheriff, therefore, the statutes
regulating such office and the manner of filling must be complied
with. The mere voluntary services of one in the sheriff's office,
with or without pay from any source, would not make such volunteer
a deputy sheriff. He would be a stranger to the duties of the
sheriff and would not be authorized to perform any of them what-
soever.

It is the policy of the law to fix and allow compensation
adequate to the official services to be performed. It is not

contemplated by law that any officer shall hold or exercise any public office upon any consideration other then that provided by the law creating his office.

So emphatically does the law require this that the framers of our Constitution have written an official oath to be taken by the officer solemnly swearing, "that I have not directly or indirectly paid, offered, or promised to pay, contributed, or promised to contribute any money, or valuable thing, or promised any public office or employment, or as a reward for the giving or withholding a vote at the election at which I was elected." (Art. XVI, Sec. 1.)

In State vs. Humphreys, 12 S.W. 99, a quo warranto case before the Supreme Court, Justice Gaines, afterwards Chief Justice, considered Mr. Humphreys' public announcement for candidates for county clerk in the following words: "To the voters of Mills County: As I have been unable to make such a canvas as was necessary to inform you in person of my views on the question of ex-officio services, I beg leave by this method to say that, if elected to the office of county clerk, I will serve for the fees of the office, and without ex-officio pay."

Concerning this the Justice said: "To permit a candidate, in order to influence the voters, to hold out a promise that he will serve in case of election for less than the fees or salary fixed by law, is to thwart the will of the Legislature, and to defeat the object of the law. It is unjust to honest aspirants who rely upon their merits for political preferment, and tends to degrade the public service by making the offices not the reward of official capacity and honorable conduct, but the prey of those who, by reason of incapacity to earn a livelihood in the common pursuits of life, and willing to undertake the duties of public service for less sum than the Legislature has deemed an adequate compensation for the work. It puts up the offices of the State to the lowest bidder, and conduces to influence the voters to lose sight of the personal fitness of the respective candidates, and to be governed by considerations of a false economy. It is gratifying consideration that this practice has been of such infrequent occurrence in our State that the Legislature has not felt called upon to pass a statute in aid of the Constitution more effectually to remedy the evil."

The sound public policy of the State thus announced is supported by the Justice's quotations from standard textbook writers and judicial decisions.

While deputy sheriffs are not selected by popular elections, they are nevertheless officers of the State who are required to take the Constitutional oath of office, and the same high standard of policy applies to them as to elective officers.

If a promise such as that made by candidate Humphreys to accept compensation at a lesser sum than that allowed by law is censurable, for much greater reason the promise of one to serve without any remuneration is offensive to the policy of the State.

Throop, a respectable authority on Public Officers, has this to say: "Every person who is appointed to any office of this kind (public) is forbidden to make, and the person who makes the appointment is forbidden to receive, any payment in respect of the appointment." (Sec. 52). Again he say: "An English case, where such a bargain, between a municipal corporation and its officer, was decreed in equity to be unlawful, as being against public policy, on the ground that the law would not allow any bargain to be made, respecting an appointment to a public office, and also because the officer is considered to require them (his fees) 'to enable him to uphold the dignity and perform the duties of his office' was fully cited in a former chapter." (Sec. 452). Yet again he says: "A board of officers, having the power of appointment to an office, cannot reduce the amount, fixed by law as the salary of the office, or make a binding contract, with the person appointed to fill it, to perform its duties at a less sum; and the acceptance of the office by him, and his discharge of the duties thereof, do not constitute a binding contract to accept such reduced sum, or a waiver of the statutory provision; but he can afterwards enforce his right to the statutory salary, by mandamus, or other appropriate legal proceeding." (Sec. 456).

Greenhood, an eminent authority on Public Policy, says: "So far has the doctrine which prohibits anything that might influence the selection of public officers from other considerations than that of personal merit been carried, that an election secured by a promise on the part of a candidate to perform the duties of the office to which he aspires, if elected, for less than the legal fees or salary, is void. Such promises tend to swerve the voter from his duty as a citizen; to blind his perceptions as to the sole question he should consider, --- the qualifications of the candidate --- and to fix them upon considerations, altogether foreign to the proper exercise of the highest right known to free men, the right of suffrage -- a right upon whose absolutely free and untrammelled exercise depends the perpetuity of our republican institutions. However laudable its object, it is demoralizing in its tendencies, and utterly subversive of the plainest dictates of public policy."

We will further say, however, there is no law of nepotism or other whatsoever that would forbid a sheriff to have another person in his office who gratuitously performs manual or clerical work not pertaining to the official duties of the sheriff. Such person would be acting in his individual capacity and not in any attempted capacity as a deputy or even an employee. Such a rel-

ation would not be contractual or binding on anyone.

Further, we will say there is nothing in the law which would prevent a sheriff from appointing the husband of a woman who was already appointed an office deputy, merely because of that relationship, and where, of course, such husband was appointed as regular deputies are appointed, and not as a voluntary worker "without pay."

Thus far we have dealt particularly with the question of a deputy sheriff serving without pay. In order that we may be sure to cover every phase of the question raised by your inquiry, we now discuss the features of nepotism.

Article 432, penal code, reads as follows: "No officer of this State or any officer of any district, county, city, precinct, school district, or other municipal subdivision of this State, or any officer or member of any State, district, county, city, school district or other municipal board, or judge of any court, created by or under authority of any general or special law of this State, or any member of the Legislature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree by affinity or within the third degree by consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or so voting, may be a member, when the salary, fees or compensation of such appointee is to be paid for directly or indirectly, out of or from public funds or fees of office or any kind or character whatsoever."

Discussing your questions seriatim, we beg to advise the Nepotism Statute would not prevent a sheriff's appointing his daughter to be deputy without pay (if any person could be appointed deputy without pay) since as is seen from the Nepotism Statute above quoted, it is not applicable except where it involves payment out of public funds as compensation. There is no statute, whether nepotism or other, that would prevent the sheriff's permitting a voluntary worker in his office, to do clerical or other unofficial work. The husband of a woman who is already an office deputy as we have shown above, could not be appointed deputy without pay, but there is no reason why he might not be appointed a deputy in the statutory method unless, of course, he is related to the sheriff within the prohibited degree above quoted.

These authorities are old, but the sound principle of public policy there announced is itself old and well-grounded in any Democratic system of selection of public servants.

We know of no court decision or text writer announcing any contrary rule.

There is an opinion by this department, however, No. 0-1896 which contains this language: "Thus we advise that the sheriff has authority, with the approval of the commissioners' Court, to appoint an additional deputy to serve without any compensation." The writer of that opinion cites no authority for the holding, and indeed such statement was not at all necessary to a complete answer to the only question propounded to him for an opinion. His discussion of the pertinent statutes involved in the request shows that the language above quoted was not responsive. The question of public policy was in no way presented or considered. We think the opinion should be overruled, and it is here overruled insofar as it announces the doctrine that the sheriff may in any event bargain with a deputy to accept the office for any consideration other than the compensation therefor as fixed by law.

These considerations, we think, compel a negative answer to all of your inquiries involving in any way the question of the right to appoint any deputy sheriff without compensation, regardless of any consideration of the Statute of Nepotism.

This conclusion is in line with the opinion by this Department of date April 26, 1932, written by Assistant Attorney General Scott Gaines, to Honorable Wardlow Lane, County Attorney of Shelby County.

SUMMARY: (1) The public policy of this State forbids the appointment of a deputy sheriff to serve without pay.

(2) A sheriff's daughter may lawfully perform non-official, manual, or clerical services for him, but such gratuitous services are voluntary and the agreement therefor binds no one, and imposes no duties upon the daughter nor liabilities on the father or the county.

(3) The husband of a presently appointed deputy, may not lawfully be appointed deputy sheriff without pay.

(4) Such husband of a deputy may lawfully be appointed deputy in the statutory manner of such appointment.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By s/Ocie Speer
      Ocie Speer
      Assistant

OS/JMc/jrb/wc

APPROVED FEB. 4, 1947
s/Price Daniel
ATTORNEY GENERAL

Approved Opinion Committee
By_BWB_Chairman