CASE 66—MANDAMUS—DECEMBER 17.

# Atchison, County Judge, v. Lucas.
# Duncan v. Same.

APPEALS FROM DAVIESS CIRCUIT COURT.

1. WOMEN ARE NOT ELIGIBLE TO OFFICES created by the Constitution of this State, and are, therefore, not eligible to the office of jailer.

2. MANDAMUS.— An applicant for a writ of mandamus must show a clear legal right to have the duty performed.  Therefore, when it appears that one is constitutionally ineligible to an office to which he has been elected, his application for a writ of mandamus requiring the county judge to permit him to qualify, should be refused.

   In this case the applicant for the writ, who held the certificate of election, being ineligible under the Constitution, the writ should

452          KENTUCKY REPORTS.          [VOL. 83.

Atchison, County Judge, v. Lucas.   Duncan v. Same.

have been refused, although there had been no decision of the contesting board adverse to the applicant when she offered to qualify in the county court.

3. THE CONTESTING ELECTION BOARD has the power to inquire and determine whether one elected to an office possesses the qualifications prescribed by the Constitution, and from its decision an appeal may be taken to the circuit court, and thence to the Court of Appeals.

In this case, after the candidate holding the certificate of election had offered to qualify in the county court, the contesting board decided that she was ineligible. *Held*—That her remedy was by an appeal, as indicated, to have her constitutional right to the office determined.

4. SUPERSEDEAS.—The execution of a writ of mandamus may be stayed by supersedeas.

5. COMPENSATION OF ACTING JAILER.—One who acted as jailer under circumstances which gave her color of title is entitled to the amount allowed her by the circuit court for dieting prisoners as against the person entitled to the office, although she may not be entitled to the fees for committing and releasing prisoners, etc., which amount to an unimportant sum over which this court has no jurisdiction.

C. S. WALKER FOR APPELLANT ATCHISON.

1. The approval of an official bond is a judicial and not a ministerial act or duty, and is not compellable by mandamus. (Civil Code, section 477; Goheen v. Myers, 18 B. Mon., 426; Cate v. Ross, 2 Duv., 244; *Ex parte* Harris, 52 Ala., 87; 23 Am. Rep., 559; General Statutes, chapter 61, section 1, page 565; *Ibid.*, chapter 48, section 4, page 503.)

2. In determining that, pending the contest as to the election, appellee was not entitled to qualify as jailor appellant acted judicially, and his decision can not be reviewed or corrected by mandamus. (General Statutes, chapter 33, article 7, section 8, page 392; Gorham v. Luckett, 6 B. Mon., 157–8; Commonwealth v. Jones, 10 Bush, 749; General Statutes, chapter 33, article 7; Wood on Mandamus, 20–1; County Court of Warren v. Daniel, 2 Bibb, 573; Louisville v. McKean, 18 B. Mon., 17; Goheen v. Myers, 18 B. Mon., 426.)

3. Pending the contest about the office before the county board, appellee had no right to qualify as jailer. (General Statutes, chapter 33, article 7, section 4, page 390; *Ibid.*, section 6, page 391; *Ibid.*, section 8, page 392; Wood on Mandamus, 29.).

4. Mandamus will not lie where there is a specific legal remedy other than by the writ for the enforcement of one's rights. (Wood on Mandamus, 18; Goheen v. Myers, 18 B. Mon., 426; Stevens v.

Atchison, County Judge, v. Lucas.  Duncan v. Same.

Wyatt, 16 B. Mon., 548; *Ex parte* Harris, 52 Ala., 87; 23 Am.
Rep., 560.)

5. When one who has a certificate of election is notoriously ineligible
to the office under the Constitution, it is the duty of the county
court to refuse to qualify such an one on application to qualify
and there is nothing in Patterson v. Miller, 2 Met., 493, in con-
flict with this proposition.  (Civil Code, section 484.)

6. But whether the county court has or not the power to inquire into
the eligibility of an applicant having a certificate of election, the
circuit court clearly has no power to compel by mandamus the
county court to qualify such an one, except as he has a consti-
tutional right to the office.  (Justices of Jefferson Co. v. Clark, 1
Mon., 82; Justices of Spencer Co. v. Harcourt, 4 B. Mon., 499;
Lowe v. Phelps, 14 Bush, 647.)

7. In Kentucky a woman is not eligible to a constitutional office.
(Constitution, article 2, section 8; *Ibid.*, article 6, sections 1 and 2;
14th Amendment to Constitution of the United States; Amy v.
Smith, 1 Litt., 332–3; Burkett v. McCarty, 10 Bush, 761; Webster's
Dictionary, "Citizen;" Bouvier's Law Dictionary, "Citizen;" Minor
v. Happersett, 21 Wall., 162; Robinson's Case, 131 Mass., 376; 41
Am. Rep., 239; General Statutes, chapter 67, section 1, page 610;
The People *ex rel* Turman v. Clute, 50 N. Y., 451; 10 Am.
Rep., 511; Bradwell v. The State, 16 Wall., 141.)

JAMES STUART, W. N. SWEENEY & SON AND WEIR, WEIR
& WALKER ON SAME SIDE.

W. N. SWEENEY & SON FOR APPELLANT DUNCAN.

1. So soon as Duncan was appointed, the powers of Mrs. Lucas ceased.
She, therefore, had no right to the fees allowed and certified in her
favor, which accrued after she became *functus officio*.  (Gen. Stat.,
pages 384, 386, 392, 567; 16 B. M., 546; Civil Code, section 488.)

2. That the appeal lies is clear.  (Bruce v. Fox, 1 Dana, 447.)

JAMES STUART AND WEIR, WEIR & WALKER ON SAME SIDE·

GEO. W. WILLIAMS, HAYCRAFT & SLACK AND GEO. W.
JOLLY FOR APPELLEE.

1. The title to an office can not be inquired into in an action for man-
damus.  (High on Ext. Legal Remedies, section 49; Moses on
Mandamus, 49; People v. Olds, 3 Cal., 167; People v. Stevens, 5
Hill, 616; *Ex parte* Doughtry, 6 Iredell, 155.)

2. Appellee holding the certificate of election, the county judge was
bound to allow her to qualify.  He had no power to inquire as to
her eligibility or qualifications.  (Patterson v. Miller, 2 Met., 497;
Cate v. Ross, 2 Duv., 244.

454       KENTUCKY REPORTS.       [Vol. 83.

Atchison, County Judge, v. Lucas. Duncan v. Same.

3. Mandamus is the proper remedy where the act to be performed is ministerial in its character, or if judicial, where the object is to compel the inferior tribunal to entertain and decide the matter. (Clark v. McKenzie, 7 Bush, 523; Arberry v. Beavers, 6 Texas, 457; High on Ext. Legal Remedies, sections 151 and 152.)

4. Votes cast for a candidate who is ineligible are not void. (Commonwealth v. Cluly, 56 Pa. St., 270; Smith v. Brown, 2 Bartlett, 395; McCrary on Elections, sections 233, 234; Cochrane v. Jones, 14 Am. Law Reg., 235; In matter of Corliss, 16 Am. Law Reg., 15; Leeman v. Hinton, 1 Duv., 37; Gen. Stat., chapter 33, article 7, section 8.)

5. It was the intention of the law-makers that, pending a contest, the person holding the certificate of election should qualify and exercise the functions of the office. This rule of law is universal. (McCrary on Elections, section 204 and section 221, and authority cited.)

6. The right to hold office "belongs equally to all persons whomsoever not excluded by the Constitution." (Gibbons v. Ogden, 9 Wheaton, 188; Magna Charta; Const. of Ky., article 6, section 2; Bill of Rights, section 4; Cooley's Const. Limit. (5th ed.), pages 36–7; Hamilton v. St. Louis County Court, 15 Mo., 13; Barker v. The People, 3 Cowen, 686.)

W. P. D. BUSH AND R. W. SLACK FOR APPELLEE IN DUNCAN V. LUCAS.

Duncan was not appointed and qualified as provided by law, and, therefore, his appointment and qualification did not divest Mrs. Lucas of the right conferred by her appointment to "act for the occasion." It is, therefore, clear that Mrs. Lucas is entitled to the allowance made under and by virtue of her appointment. (Gen. Stat., chapter 61, article 1, sections 8 and 9.)

STATEMENT OF FACTS IN DUNCAN v. LUCAS.

On the 14th day of July, 1884, there being a vacancy in the office of jailer of Daviess county, caused by the death of the last jailer, the widow and a son of the deceased jailer were appointed by the county judge as a "committee," to take charge of the jail and diet the prisoners. On the 4th day of August following an election was held to fill the vacancy in the office, and M. C. Lucas, the widow of the deceased jailer, being a candidate, and receiving the highest number of votes, received the certificate of election. Appellant Duncan, the opposing candidate, contested the election of Mrs. Lucas, the appellee, and on the 19th of September, 1884, the contesting board adjudged that Mrs. Lucas was ineligible. Thereupon the county court entered an order "discharging" appellee and her son as a "committee," declared the office vacant, and appointed

Duncan to fill the vacancy. In the meantime, however, the circuit court had awarded a mandamus against the county judge, requiring him to permit Mrs. Lucas to qualify, but the execution of the writ had been superseded. Duncan having taken the oath and executed bond, which was approved, demanded of appellee the possession of the jail and prisoners, which was refused. November 1, 1884, appellee, who was still acting as jailer, presented her claim to the circuit court for dieting prisoners, etc., from August 21 to October 21, 1884. The claim being allowed, appellant filed his petition asking the court to set aside the order of allowance, and to certify the claim in his favor, setting up his title to the office by virtue of his appointment. This appeal is prosecuted by Duncan from an order of the court refusing to set aside the order of allowance to appellee.

The facts in the case of Atchison, County Judge, v. Lucas are stated in the opinion.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, Mrs. M. C. Lucas, filed her petition in the Daviess Circuit Court, asking a mandamus against the appellant, who was the county judge of Daviess county, compelling him to permit her to qualify as jailer of that county. It is alleged in her petition that she was elected to that office at the August election, 1884, by the qualified voters of the county, receiving the highest number of votes cast; that by a comparison of the poll-books by those authorized by law to compare them, it was ascertained that she was elected, and a certificate of that fact is filed with and made part of her petition; that she appeared in the Daviess County Court, of which court the appellant Atchison was the presiding judge, his court being then in session, and producing to him her certificate of election, offered to qualify by taking the oath and executing a bond with good and sufficient sureties; that the defendant refused to permit her to qualify, to administer the oath, or accept her bond.

S. F. Duncan, the opposing candidate, who had been defeated by her at the polls, was, at the time the appellee offered to qualify, contesting her right to the office before the county board, on the ground that the appellee, being a female, was ineligible; and this was substantially the defense relied on by the county judge.

A demurrer was sustained to his answer, and failing to plead further, a peremptory mandamus was awarded, directing the appellant to permit the appellee to qualify as jailer.

This action of the circuit court was stayed by supersedeas, and the case is here on the appeal of the county judge as well as the appeal of the contestant, Duncan.

It is maintained by counsel for the appellee that the county judge had no right to supersede the execution of the writ, and if permitted to do so the effect would be to destroy a remedy for immediate relief, and where no delay should exist in its execution.

While the writ is purely mandatory and not remedial, we find nothing in the Code of Practice with reference to the right of appeal distinguishing a proceeding of this character from a final order or judgment in other cases. No exception has been made, but, on the contrary, when the Commonwealth is affected by a final order on an application for a mandamus, the Attorney General may prosecute an appeal without security, as provided by section 478 of the Code, the framers of the Code doubting the right of the Attorney General to appeal without

special authority, leaving the right of appeal by parties litigants from the final orders and judgments of the circuit court, except in cases where the right has been withheld. It is well settled that the title to an office can not be determined in a proceeding by mandamus, and we think equally as well settled in this State that the person elected, or who has received the highest number of votes for an office exclusively within the gift of the voters of his county, and obtains a certificate to that effect from the examining board, is entitled to qualify. This rule, however, must have its exceptions, and in a case where the person applying is a citizen, has all the requisites of age, residence, etc., prescribed by the Constitution, and still not entitled to hold an office, why should the county judge permit her to qualify and enter upon the discharge of its duties? When the person presenting the certificate of election has the right to hold the office in the event he possesses the qualifications prescribed by the Constitution, then the county judge would have no right to inquire into the eligibility of the party presenting the certificate, or to convert himself into a contesting board with a view of determining who of the rival candidates had been elected. Other tribunals have been created for the purpose of determining such questions, and it is composed, with reference to county offices, of the presiding judge and the two justices residing nearest the court-house. The county judge in this case could not properly act, and his place was filled in accordance with subsection 4 of section 13 of chapter 33, General Statutes.

In the case of Patterson v. Miller, 2 Met., 493, this court said: "The duty which the law devolves upon the county court in regard to the sheriff only extends to administering the oath of office and taking the bond. This duty is incumbent on the county court whenever a person claiming to be entitled to the office of sheriff presents his certificate of election from the proper board. The court has no power to inquire into his eligibility, or to refuse to permit him to qualify and execute bond according to law on the ground that he is ineligible to office."

The county judge, therefore, in determining the eligibility of the appellee, would, under the general rule applicable to such cases, have assumed a jurisdiction not belonging to that tribunal, and mandamus would have been the proper remedy to compel the discharge of this simple duty.

It is not a question in this case as to the solvency or the sufficiency of the sureties, or an attempt on the part of the circuit court to interfere with the discretion of the county judge as to the character of the bond; but the complaint is, that the county judge has declined to act in any manner. He could, therefore, in a proper case, be compelled to act, but having the discretion as to the sufficiency of the sureties, the circuit judge was powerless to control its exercise. All that the circuit judge has done in this case is to compel the county judge to entertain the motion. (Clark v. McKenzie, 7 Bush, 523; Cate v. Ross, 2 Duvall, 243; High on Extraordinary Legal Remedies, sections 151, 152.)

The contesting board, after the offer by the appel-

lee to qualify in the county court, adjudged that she was ineligible to the office, and thereupon the county judge declared the office vacant, and appointed the appellant Duncan to fill the vacancy until an election should take place.  The power of the contesting board to determine the candidate ineligible is given by section 8, article 7, chapter 33, General Statutes, and their right to make such an inquiry has been heretofore decided by this court in the case of the Commonwealth v. Jones, 10 Bush, 725.

By section 11 of the same article it is provided, that "when a new election is ordered, or the incumbent adjudged not to be entitled, his powers shall immediately cease, and if the office is not adjudged to another, it shall be deemed to be vacant."

An appeal is allowed from the decision of the contesting board to the circuit court of the county in which the contestant resides, and from thence to the Court of Appeals, as in other cases.  The appellee's remedy, when the decision of the contesting board was adverse to her right, was by an appeal to the Court of Appeals, and there her constitutional right to hold the office could have been determined; but it is insisted that when the application was made to the county judge there was no decision adverse to the appellee, and, therefore, it was the duty of the county judge to obey the writ.

It may be conceded for the purposes of this case that no supersedeas could have issued in order to stay the writ; that the certificate of election is the evidence of the right to qualify, and the party holding such a certificate is not compelled to postpone

460          KENTUCKY REPORTS.          [Vol. 83.

Atchison, County Judge, v. Lucas.   Duncan v. Same.

his application to qualify until the decision of the contesting board is rendered; yet it by no means follows that the circuit judge is required to award a mandamus upon this evidence of the right to the office.

The party making the application for the writ must show a clear legal right on his part to have the duty performed. If, therefore, it appeared from the petition of the appellee that she was constitutionally ineligible to the office of jailer, the circuit judge should have refused the writ.

The case of Patterson v. Miller, above, determining the duty of the county court in regard to the qualification of county officers, did not arise from any mandatory order from the one court to the other, but was an action of trespass against Miller, who had seized the property of the plaintiff, pretending to be the sheriff of Russell county, when, in fact, he was not the sheriff, this court holding that the fact of his qualification in the county court as sheriff could not be relied on to prove his eligibility to the office, for the reason the county court had no right to make such an inquiry. In the case being considered, if the appellee was not entitled to the office under any state of case on account of her sex, or if the office had been declared vacant by the contesting board, as provided by statute, we see no reason why the county court, in either instance, could not refuse the application to qualify; and certainly, when applying to the circuit judge asking a mandamus, she must allege a state of facts showing her entitled to the writ.

In the case of the Justices of Jefferson County v. Clark, 1 Monroe, 82, Clark had been appointed a justice, but the county court refused to permit him to take his seat on the ground that his appointment was in violation of the Constitution. He applied for and obtained a mandamus compelling the county court to permit him to take his seat. The writ was awarded, and, on an appeal to this court, it was held that the plaintiff must "show a legal right to that which he demands, and having failed to do so, the award of a peremptory mandamus by the circuit court is erroneous." The decision is based on the ground that the appointment of Clark by the Governor was unconstitutional.

In Justices of Spencer County Court v. Harcourt, 4 B. M., 499, the latter was held by his associate justices not entitled to hold the office of justice of the peace, because he was at the time holding the office of postmaster under the Federal Government. The office was declared vacant by the county court, and the circuit judge, on the application of Harcourt, made an order for peremptory mandamus against the justices. On an appeal by the justices to this court, it was held that the order of the county court declaring the office vacant did not have the effect of removing Harcourt, as the justices had no judicial power over the subject; but though they had not the power to remove or determine judicially that the office had been foreited, to entitle Harcourt to sustain his application for a peremptory mandamus, etc., he must show that he was a justice of the peace, and had the constitutional and legal right to

discharge the duties of the office. The two offices being incompatible, could not be held and the duties discharged at the same time by the same person, and therefore it was error to award the writ. The judgment of the circuit court was reversed.

In Lowe v. Phelps, 14 Bush, 642, this court said:

"Mandamus can not be maintained unless there is a legal right in the appellant and a corresponding duty imposed by law on the appellee."

It is plain, therefore, that if the appellee cannot hold the office of jailer under the Constitution, the writ should have been withheld, and this at last is the vital question presented on the appeal.

Section 8, article 2, of the Constitution provides, that "every free *white male* citizen of the age of twenty-one years, who has resided in the State two years, or in the county, town, or city in which he offers to vote one year next preceding the election, shall be a voter, but such voter shall have been a resident of the precinct in which he offers to vote, and he shall vote in said precinct and not elsewhere."

Section 1, of article 6, of the Constitution provides that certain officers, including jailer, shall be elected, etc., and section 2 of the same article prescribes the qualifications as follows:

"No person shall be eligible to the offices mentioned in this article who is not at the time twenty-four years old (except clerks of county and circuit courts, sheriffs, constables, and county attorneys, who shall be eligible at the age of twenty-one years), a citizen of the United States, and who has not resided

two years next preceding the election in the State,. and one year in the county or district for which he is a candidate.''

The fourteenth amendment to the Constitution of the United States defines who are citizens in the following language: ''All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.'' It is, therefore,. not necessary to discuss the meaning of the word. person or the word citizen as used in the State. Constitution, as both include women as well as men in the most comprehensive sense; but being a citizen does not necessarily entitle one to the right of suffrage or the right to•hold any constitutional office.  By the provisions of the Constitution of this. State, adopted in the year 1792, and by a like provision of the Constitution of 1799, as well as in the. present Constitution, women were excluded from the right of suffrage by conferring that right upon *male citizens* alone, and it would be a singular construction of that provision in either Constitution to determine that women should have no voice in the selection of those who are to fill the offices created by the Constitution, and at the same time given the right to fill those offices if elected by the popular vote.

While our form of government is based on the theory that the people are ·capable of choosing their own officers, and under our State Constitution all persons are eligible to office not excluded by its. provisions, it necessarily follows, it seems to us,.

·464      KENTUCKY REPORTS.    [Vol. 83.

Atchison, County Judge, v. Lucas. Duncan v. Same.

that when women are excluded from the right to vote when these officers are to be elected, they are also excluded from the right to hold the · offices voted for. Besides, words importing the masculine gender are used throughout the entire Constitution when prescribing the qualifications of the citizen for the various offices created by that instrument, showing a plain purpose of restricting not only the right to vote but the right to hold those offices to the male citizen. In prescribing the qualifications ·of the Governor: *He* shall be thirty-five years of ·age, etc., shall be ineligible for the succeeding four years after the expiration of the term for which *he* ·shall have been elected. As to the Lieutenant-Governor: *He* shall, by virtue of his office, be Speaker ·of the Senate. A Judge of the Court of Appeals must be a resident of the district in which *he* may ·be a candidate. A jailer must have resided one year ·in the county in which *he* is a candidate.

It is true that, under the rule for the construction of statutes, a word importing the masculine gender may and often is extended or applied to ·females as well as males, and this rule is adopted that the will or intent of the law-making power may ·become effectual, and the object in view accomplished.

If it appeared from the provisions of the Constitution that the framers of that instrument intended to confer the right to hold office on the female citizen as well as the male citizen, although certain ·words are used implying the right in the male citizen only, this court, in order to carry out that

intent, would hold that these rights belonged to the one as well as the other.

After a careful consideration of the entire instrument, we find no room for such a construction; but, on the contrary, so many provisions repugnant to such a view of the question as amounts to the exclusion of females from the exercise of the rights claimed.

At common law, a woman could not hold any public office, and with three Constitutions adopted for this State, beginning with the formation of the State Government, with the right of women during this entire period to vote for and hold these constitutional offices at least asserted, if not generally discussed, we find no change made from the adoption of the first Constitution to the present time with reference to the exercise of these great rights, and it seems to us to be unreasonable to hold that, while the right to vote is denied them, the greater right, that of holding the offices voted for, is secured to them by that instrument, or at least not prohibited by its provisions. The entire frame-work of the Constitution forbids such a construction.

In the case of Minor v. Happersett, 21 Wall., 162, upon a writ of error to the Supreme Court of Missouri from the Supreme Court of the United States, Mrs. Minor, wishing to vote for electors for President, applied to be registered as a lawful voter. This Happersett refused to do on the ground that she was not a male citizen of the United States, the Constitution of the State of Missouri providing that "every male citizen of the United States shall be

vol. 83.—30

entitled to vote." The officer was sued by Mrs. Minor, and the case finally carried to the Supreme Court of the United States, where it was held that neither the Constitution nor the fourteenth amendment, now a part of it, made all citizens voters; further, that a provision in a State Constitution which confines the right of voting · to male citizens: of the United States, is no violation of the Federal Constitution.    In such a State women have no right: to vote.

A question was presented to the Supreme Court of Massachusetts as to the right of a woman to hold the office of justice of the peace.  It was held that a woman formally appointed and commissioned a justice of the peace would have no constitutional or legal authority to exercise any of the functions appertaining to that office.  (Supplement, 107 Mass., 604.)

Many other authorities might be cited with reference to the same subject, denying the right here insisted on by the appellee, and none have been produced showing a different construction of constitutional provisions similar in effect to the organic law of this State.

We do not mean to adjudge that offices of legislative creation may not be filled by women, or the right of suffrage granted them in certain cases; but, on the contrary, such rights may be conferred.  We have been discussing only the provisions of the Constitution affecting the right of suffrage, and the right to hold office when applied to offices created by the Constitution.

The provisions of the organic law must be construed as we find them. It is not for the court to make an innovation upon what has been the recognized construction of these constitutional provisions for nearly a century, and although the voters of the county of Daviess have selected the appellee as their choice for jailer, we feel constrained to adjudge that she can not hold this office under the Constitution. Why women should be excluded from the right to discharge such public trusts is not the subject of inquiry in this case. That the appellee in the present instance is well qualified to discharge the duties of jailer is not questioned; but until some change is made in the organic law, by which such rights may be legally and constitutionally asserted, they must be denied. The judgment as to Atchison, the county judge, is, therefore, reversed, with directions to dismiss appellee's petition.

On the appeal of Duncan, who was not entitled to the office by reason of the ineligibility of the appellee, he did become entitled to it when the office became vacant, under an appointment from the county judge. He is claiming on his appeal the allowance made to the appellee for her services as jailer by the circuit court, and while he may be entitled to the fees, they amount to an insignificant sum, and over which this court has no jurisdiction. The entire account is for two hundred and ninety-four dollars, a dollar or two of which is for committing and releasing prisoners; the balance is for food and diet actually furnished the prisoners in jail, and purchased by money from the pocket of the

appellee. If the appellant had furnished this food, etc., he would have been compelled to pay for it out of his own means, or could only be entitled to the profits less the costs. It is not the mere ministerial or executive labor of entering orders, serving summons, releasing prisoners, etc., but means of the appellee furnished from her own resources, and it would be against every rule of law, equity, and good conscience to take this from the appellee and give it to the appellant. If a mere usurper, the court might have refused to make the allowance, but it has been made, and under circumstances that this court would not reverse the order in favor of one who has no claim to it.

Judgment as to Duncan affirmed.