CASES DECIDED

BY THE

# SUPREME COURT

OF THE

## TERRITORY OF HAWAII

---

JONAH KUMALAE *v.* DAVID KALAUOKALANI,
CLERK OF THE CITY AND COUNTY OF HONO-
LULU.

### No. 1195.

MANUEL C. PACHECO *v.* DAVID KALAUOKALANI,
CLERK OF THE CITY AND COUNTY OF HONO-
LULU.

### No. 1196.

RESERVED QUESTIONS FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

ARGUED JUNE 30, 1919.                    DECIDED JULY 1, 1919.

COKE, C. J., KEMP AND EDINGS, JJ.

MANDAMUS—*ministerial official duty—performance compelled by man-*
*damus.*

Where a plain official duty, purely ministerial, requiring the
exercise of no discretion, is to be performed and performance is
refused, mandamus will lie upon the application of the party ag-
grieved to compel its performance.

Opinion of the Court.

ELECTIONS—*duty of canvassing officer ministerial.*

> In the matter of canvassing the returns and issuing certificates of election the duty of the canvassing officer is purely ministerial.

SAME—*canvassing officer has no right to inquire into eligibility.*

> The canvassing officer has no right to go behind the returns and inquire into the eligibility of a candidate but must issue a certificate of election to the one who on the face of the returns has the highest number of votes.

SAME—*certificate of—mandamus—eligibility not an issue.*

> In a mandamus proceeding to compel the canvassing officer to issue a certificate of election to the one who on the face of the returns has the highest number of votes the petitioner's eligibility to be elected is not an issue.

SAME—*same—same—issuance of certificate to another no defense.*

> The wrongful issuance of a certificate to a candidate not receiving the highest vote is not a defense in a mandamus proceeding by the party rightfully entitled thereto.

OPINION OF THE COURT BY KEMP, J.

(Coke, C. J., dissenting in part and concurring in part.)

These cases are before us upon questions reserved to us by the second judge of the first judicial circuit, the questions in the Pacheco case being as follows:

"1. In this case does the following question arise, namely: was the petitioner, M. C. Pacheco, at the time of the election held on June 3, 1919, for supervisors of the City and County of Honolulu ineligible for election as one of said supervisors by reason of the fact that at the election held on November 5, 1916, he was duly elected as a member of the senate of the legislature of the Territory of Hawaii to serve for the term of four years?

"2. If the question aforesaid of eligibility does arise in this case, was the petitioner at the time of the election of June 3, 1919, eligible for election as one of the supervisors of the City and County of Honolulu?

"3. Should the court grant the petitioner's motion to strike certain allegations from the respondent's return and the motion to strike certain exhibits (letters) from

the files, which motions were noted by the court reporter and are reported herewith?

"4.   Should the alternative writ heretofore issued herein be made peremptory?"

The questions in the case of Jonah Kumalae against the same respondent are the same as the above except in the first question it is stated that petitioner was in 1918 elected to the house of representatives to serve for a term of two years.

In a memorandum opinion heretofore filed we held, without setting forth any reasons therefor, that the first of said questions should be answered in the negative, that because of our answer to the first question it became unnecessary to answer the second question and that the third and fourth questions should be answered in the affirmative. It will now be our endeavor to set forth the reasons for our answer as above set forth.

A brief statement of the proceedings had in the lower court, together with the facts there developed, will be necessary to an understanding of our views. It appears that at an election held in the City and County of Honolulu on June 3, 1919, the petitioners were two of fourteen candidates for the office of supervisor of the City and County of Honolulu; that of the fourteen candidates for said office seven were to be elected; that from the official tabulation of the votes received by the various candidates it appeared that the petitioner Pacheco received the highest number of votes and the petitioner Kumalae received the third highest vote; that the respondent is the city and county clerk, the officer who under our statute tabulates the returns and issues certificates of election; that after the votes had been tabulated petitioners made demand upon respondent that he issue to them certificates of election and that he has

failed and refused and still fails and refuses to issue to them such certificates.

Petitioners each filed a petition for mandamus against respondent setting forth the facts as above outlined but in more detail, and each prayed for the issuance of an alternative writ commanding the respondent to issue and deliver him a certificate of election in due form or to show cause within a time to be fixed by the court why he should not do so. Upon these petitions the alternative writs were issued as prayed in which respondent was commanded to issue and deliver to such petitioner his certificate of election to the office of supervisor of the City and County of Honolulu or to show cause at 9 o'clock a. m. on Saturday, June 21, 1919, why he should not do so. The writs were dated and issued on June 19, 1919, and were served at 3:35 o'clock p. m. of the same day.

From this point on for convenience we will refer to only one of the cases as anything that is said in one will apply with equal force in the other.

At the hour fixed in the alternative writ for respondent to show cause he filed a motion to quash the writ on the ground that the writ did not comply with the statute in that it did not direct him to do what had been demanded of him or show cause to the contrary within a certain time after service of the order, fixed by any court, justice or judge, and upon the further ground that he had had less than forty-eight hours written notice of the hearing of said matter. The motion to quash was overruled whereupon respondent demurred to the writ generally and specially that said writ does not show that the petitioner is eligible to fill the office and does not show that he is a citizen of the United States of America and of the Territory of Hawaii and that he has been a duly qualified elector of said Territory and of the City and

County for at least two years next prior to the election in the petition alleged. Before a ruling was had upon the demurrer the petitioner, with the permission of the court, amended his petition and the writ was thereupon amended so as to allege that he is a citizen of the United States and of the Territory. and that he has been a duly qualified elector of said Territory and of the City and County for more than two years next prior to said election. No allegation of general eligibility to hold the office of supervisor was made. Upon the allowance of this amendment the demurrer was overruled and respondent filed his return to the alternative writ.

The return admits that the petitioner possesses the qualifications alleged in the amended petition and set forth in the amended writ; that he was a candidate for the office of supervisor at said election as alleged and that there were the fourteen candidates (seven were elected) as alleged. Answering the allegation to the effect that respondent as county clerk and returning officer immediately upon the receipt of statement of votes and poll lists from the inspectors of election tabulated the same and ascertained that the totals of said votes cast at said election were as alleged by petitioner and as set forth in said alternative writ, he says that he is advised by counsel that the votes alleged to have been cast for the petitioner were not cast for him and he therefore denies that the said votes or any of them were cast for petitioner. Answering the allegation to the effect that after the respondent had tabulated the votes as alleged and ascertained the fact that petitioner had received the highest number of votes of any of said fourteen candidates demand was made upon him by petitioner that he issue to petitioner a certificate of his election he admits that such demand was made and that he refused and still refuses to issue and deliver such certifi-

.cate but denies that same was after the respondent had received and tabulated the returns as alleged or ascertained that the totals were as set forth in said alternative writ and alleges that said demand was subsequent to the issuance of certificates to Edward P. Fogarty and William J. Sheldon hereinafter referred to.

Said return further sets forth that after respondent had received the returns of said election and while he was proceeding to tabulate the same and ascertain the results of said election he received a letter from J. H. Fisher, a citizen and elector of the City and County of Honolulu, demanding that upon the face of the returns certificates of election be issued to Edward P. Fogarty and William J. Sheldon as among the seven receiving the highest number of votes, on the ground that petitioners were not eligible to be elected to said office one being a member of the senate of the Territory and the other a member of the house of representatives of the Territory, and that said letter called his attention to the fact that the attorney general of the Territory had held that petitioners were not eligible, and claiming that said ineligibility being known to the voters their votes could not be counted; that being in doubt as to his duty in the matter he applied to the city and county attorney for his opinion in the matter and was advised by said city and county attorney that certificates should be issued to said Fogarty and Sheldon and that he thereupon did issue certificates to said Fogarty and Sheldon. Copies of the letter from said Fisher and the opinions of the attorney general and of the city and county attorney were attached to the return as exhibits.

The return further sets up the fact that petitioner was a member of the territorial legislature at the time of said election and that the court should not in its discretion issue the writ because he says it would enable

petitioner to claim an office which he is ineligible to be elected to.

The return further sets up the fact that criminal prosecutions have been instituted and are now pending against the respondent for his failure to issue such certificates and that as a matter of discretion the court should not issue said writ while said criminal prosecutions are pending, and that further by reason of the facts aforesaid a speedy and adequate remedy at law is provided in that the title to said office can be tested by *quo warranto* after July 1, 1919.

Petitioner made a motion to strike from the records of this case the exhibits attached to respondent's return and all allegations in said return challenging petitioner's eligibility and alleging the pendency of criminal prosecutions against respondent for his failure and refusal to issue said certificates.

In reply to said return petitioner denied that any of the matters set up in said return constituted grounds why the peremptory writ should not issue.

After the hearing of evidence the court reserved the questions above set out to this court and accompanied them with his findings of fact, the substance of which follows:

After finding facts in substance the same as alleged in the alternative writ he finds that petitioner is a member of the territorial legislature and that during the campaign preceding the primary election and the county election thereafter there were daily discussions in campaign speeches by petitioner and others before the voters in all parts of the county concerning petitioner's eligibility, in which the opinion of the attorney general holding petitioner ineligible together with the opinion of the former attorney general to the contrary were discussed, petitioner claiming to be eligible, and that as a result of

these discussions the voters became fully advised of said opinions of the attorney general and the former attorney general and that petitioner was a member of the territorial legislature at the time of said election.

The answer to the first question is, in our view of the case, controlling in answering the remaining questions. It is a general principle of law well established by the decisions of the courts throughout the country that when a plain official duty, purely ministerial, requiring the exercise of no discretion is to be performed and performance is refused mandamus will lie upon the application of the party aggrieved to compel its performance. *Board of Liquidation* v. *McComb*, 92 U. S. 531; *Garfield* v. *Goldsby*, 211 U. S. 249; *State ex rel Harvey* v. *Mason*, 45 Wash. 234.

It has been universally held, we believe, that the duty of the canvassing officer in the matter of canvassing the returns and issuing certificates of election is purely ministerial. 15 Cyc. 379; *People* v. *Hilliard*, 29 Ill. 413; *Commonwealth ex rel Parker* v. *Emminger*, 74 Pa. 479; *Page* v. *Utah Commission*, 11 Utah 119; *Coll* v. *Canvassers*, 83 Mich. 367; *Lewis* v. *Commissioners*, 16 Kan. 102-108. There is nothing in our statute that justifies a different conclusion. Under our statute the city and county clerk is the canvassing officer in city and county elections and the statute prescribes among other things that "the persons receiving the highest number of votes shall be declared elected, and the city and county clerk shall immediately deliver to the persons elected certificates of election" (Sec. 1686 R. L. 1915). This statute leaves no room for doubt as to what the duty of the clerk is in respect to the delivery of certificates. It is his duty to deliver certificates to the ones who on the face of the returns have received the highest number of votes and in ascertaining who has received the highest

number of votes and issuing certificates he has only ministerial duties to perform.

But it has been contended in behalf of the respondent that the petitioner is ineligible to be elected to said office and that the facts upon which it is claimed the petitioner is ineligible being undisputed renders the determination of his eligibility purely a question of law and that regardless of whether respondent had the right to pass upon his eligibility the court should in this proceeding determine the question, because if ineligible it would serve no useful purpose to issue to him a certificate of election to an office from which he could be immediately removed.

*People* v. *Board of Canvassers,* 129 N. Y. 360, is the case principally relied upon in support of this contention and it undoubtedly supports it. In that case the court took the view that as the question of the candidate's eligibility had attracted much public attention the public interest required that they should meet and determine the question of eligibility if within their judicial competency to do so. It was decided by a divided court that, the eligibility depending upon undisputed facts, it would be unfortunate to have the case go through all the courts and to leave the most important and vital matter in it undecided. Accordingly the court decided the question of eligibility against the candidate and refused to authorize the writ to aid him in accomplishing what is termed a wrong. There is no disposition upon our part to question the soundness of the abstract proposition of law to the effect that the writ will not issue to compel the performance of an unlawful act or to aid one in carrying out an unlawful proceeding. What we do question is the application of this principle to such a case as the one before us.

In the case of *Kanealii* v. *Hardy,* 17 Haw. 1, which

was a mandamus proceeding to compel a circuit judge to approve the bond of one who had a certificate of election to the office of supervisor, said judge having refused to approve said bond on the ground, as claimed, that certain names on petitioner's nomination papers were forged, this court speaking through Chief Justice Frear, said: "The judge is not given any jurisdiction in passing upon the sufficiency of the bond to decide upon the validity of the nomination papers. Neither the petitioner nor any one else has been convicted of forging the nomination papers, nor has the validity or invalidity of those papers been determined in quo warranto or any other proceedings. It is true that an officer who is charged with the duty of approving the bond of another officer is not obliged to approve a bond presented by any person. It is his duty to approve the bond of only the person entitled to the office, and yet all that he can require is proper credentials of the applicant or a prima facie showing that the applicant is entitled to the office; he cannot in general enter into an investigation for the purpose of passing upon the validity of those credentials or at least the validity of the acts leading up to the acquisition of those credentials. The approval of the bond does not assume the validity of the election but is merely one step in the process by which the applicant may be put in a position to show an apparent right or to contest proceedings that may be brought questioning his title to the office. How, for instance, in the present case, could the petitioner sustain his right to the office in the quo warranto proceedings in the absence of the approval of his bond, even if he showed that his nomination papers were valid? Even this court, in these mandamus proceedings, cannot go into the question of the validity of the nomination, for mandamus is not a proper method of determining title to office. Courts often compel by

mandamus boards of canvassers to count the ballots and declare the results irrespective of alleged violations of law in the prior stages of an election."

In *Harris* v. *Cooper,* 14 Haw. 145, this court held that it was the duty of the secretary to place on the ballot the name of a candidate duly nominated even though he was ineligible, and declined to compel the secretary to omit such name even though for the purpose of that case (submitted on agreed facts) it was admitted that he was ineligible.

If, as stated by Chief Justice Frear in *Kanealii* v. *Hardy,* the relator was entitled to have his bond approved without regard to whether his nomination papers were forged, as one step in the process by which the applicant may be put in position to show an apparent right or to contest proceedings that may be brought questioning his title to the office, how can it be said that the petitioner in this case is not entitled to his certificate of election regardless of whether he is eligible or ineligible? Without his certificate of election he cannot show his right to have his bond approved "as a step in the process by which he may be put in a position to show an apparent right to said office."

The case of *People* v. *Board of Canvassers* was discussed by this court in both *Kanealii* v. *Hardy* and *Harris* v. *Cooper,* and while in neither case was there an express disapproval of said decision the conclusion reached in those cases seems to be contrary to that reached by the New York court. We think that both the weight of authority and reason support the minority opinion in the New York case, where it is held that the writ should issue to compel the canvasser to issue a certificate of election to the petitioner who upon the face of the returns received the highest number of votes without considering the question of his eligibility.

"When an act, the doing of which is sought to be compelled by mandamus, is the final thing and if done gives to the relator all that he seeks proximately or ultimately, then the question whether he is entitled to have that done may be inquired into by the officer or person to whom the mandamus is sought, and is also to be considered by the tribunal which is moved to grant the mandamus, but where the act to be done is but a step towards the final result, and is but the means of setting in motion a tribunal which is to decide upon the right to the final relief claimed, then the inferior officer or tribunal may not inquire whether there exists the right to the final relief, and can only ask whether the relator shows a right to have the act done which is sought from him or it." *People ex rel Freer* v. *Canal Appraisers*, 73 N. Y. 446.

In the present case petitioner's final and ultimate relief is the judgment of a court of competent jurisdiction, rendered in an appropriate proceeding in which all the necessary parties are present, as to whether he was duly elected supervisor and entitled to hold the office, and that final relief involves not only his plurality of votes but his qualifications as well. But he is here, not asking that final relief but seeking to take one step necessary as a preliminary to it, which involves only the count, but not his qualifications, and neither the county clerk nor the court, in considering his right to that step, can inquire into his right to a different and further ultimate relief.

Let us suppose that in this proceeding we should determine the question of the petitioner's eligibility and decide it in his favor and it should afterwards develop that some one, not a party to this proceeding, desired to contest his right to the office by *quo warranto* or other proceedings on the ground of his ineligibility and that by reason of the alleged ineligibility said party is entitled to be inducted into or to hold said office. Under such

circumstances this court would be placed in the position of having decided the case against the contestant without his having been given a chance to be heard. This supposition is not far-fetched for it appears from respondent's return to the alternative writ issued herein that instead of issuing certificates to these petitioners certificates of election have been issued by the respondent to Edward P. Fogarty and William J. Sheldon, the candidates at said election who received the eighth and ninth highest vote as shown by the face of the returns and yet the holders of these certificates are not parties to this proceeding and could not have been made parties and therefore could not be bound by any judgment, order or decree entered herein.

To compel the issuance of the certificate of election to the petitioner in this case without going into the question of eligibility is simply to compel an observance of that orderly procedure in elections which the law prescribes. It should have the very desirable effect of teaching city clerks that they have no judicial functions and that they must content themselves with doing that which the law requires them to do, viz., to ascertain who has the highest number of votes and to issue a certificate of election to that person. The fact that certificates of election have already been issued to others affords no reason why we should not require respondent to issue a certificate to the party entitled thereto. The respondent cannot set up his own wrongful conduct as a defense to this action. *Smith* v. *Lawrence,* 2 S. D. 185; 15 Cyc. 387; *Ellis* v. *County Commissioners,* 2 Gray (Mass.) 370; *State* v. *Trimbell,* 12 Wash. 440, 41 Pac. 183; *Coll* v. *Canvassers, supra.*

Counsel have insisted that the theory upon which we hold that the question of eligibility of petitioner is not involved in this case has been disapproved by the Su-

preme Court of the United States in two recent decisions and have referred us to the cases of *Duncan Townsite Co.* v. *Lane*, 245 U. S. 308, and *United States* v. *Fisher*, 222 U. S. 204.

It is in our opinion a sufficient answer to this argument to point out that in each of these cases the petitioner sought to procure the final relief to which he would in any event be entitled. In the *Duncan Townsite Co.* case the petitioner sought a mandamus to compel the Secretary of the Interior to restore the name of one Alberson to the rolls under the Choctaw-Chickasaw agreement and to execute and record a patent for land described in an allotment certificate issued in his name by the Dawes Commission. The trial court entered judgment for the petitioner commanding issue and record of the patent but made no order in respect to restoring Alberson's name to the rolls. The petitioner acquiesced in the judgment; but upon writ of error sued out by respondent the judgment was reversed by the court of appeals and the petitioner brought the case to the Supreme Court on writ of error. In affirming the judgment of the court of appeals the Supreme Court said: "We are not required to decide whether (as suggested in *Lowe* v. *Fisher*, 223 U. S. 95, 107) the power to remove Alberson's name from the rolls had, because of §2 of the Act of April 26, 1906, expired before the Secretary acted. For the Supreme Court of the District did not order the name restored, and its judgment was acquiesced in by the relator. The claim which the relator makes in this court rests wholly upon the fact that the relator was a *bona fide* purchaser for value. But the doctrine of *bona fide* purchaser for value applies only to purchasers of the legal estate. *Hawley* v. *Diller*, 178 U. S. 476, 484. It 'is in no respect a rule of property, but a rule of inaction.' Pomeroy, Equity Jurisprudence,

§743. It is a shield by which the purchaser of a legal title may protect himself against the holder of an equity, not a sword by which the owner of an equity may overcome the holder of both the legal title and an equity. *Boone* v. *Chiles,* 10 Pet. 177, 210" (p. 311).

Applying the above principles the court used language which is relied upon here but which we think has no application to the case before us. The other case referred to is subject to the same criticism.

If the relief sought by the petitioner was that he be inducted into the office to which he claims to have been elected he would then be compelled to show not only that he received the necessary votes to elect him but that he was and is eligible to be so elected.

*Garfield* v. *Goldsby,* 211 U. S. 249, was a mandamus by Goldsby to require the then Secretary of the Interior to erase certain marks and notations theretofore made by his predecessor in office upon the rolls, striking therefrom the name of Goldsby as an approved member of the Chickasaw nation and to restore him to enrollment as a member of the nation. It did not appear from the pleadings that Goldsby was an original enrolled member of the tribe but it did appear that he had been enrolled as a member of the Chickasaw nation by the Dawes Commission and had received an allotment of land but no patent had been issued for the same. The Secretary of the Interior without notice to relator erased his name from the rolls. In affirming a judgment requiring the Secretary to restore the relator's name the court said: "The government contends, and we have held, that it does not appear in this case whether Goldsby's name was on the original or other tribal rolls, a fact essential to be known in order to determine whether his contention be sound that such an enrollment gave him the right to participate in the division of the funds and lands of

the nation irrespective of the action of the Dawes Commission, the court of the Indian Territory, or the citizenship court. The question here involved concerns the right and authority of the Secretary of the Interior to take the action of March 4, 1907, in summarily striking the relator's name from the rolls. That is the question involved in this case" (p. 264).

It will be noted that the principal difference between this case (*Garfield* v. *Goldsby*) and that of *Duncan Townsite Co.* v. *Lane* is that in this case the petitioner only sought to have his name restored to the rolls while in the other case the relief sought was to have a patent issued and recorded, which would have vested in him the legal title to the land and was the final or ultimate relief to which the petitioner would in any event be entitled.

In the course of the opinion in *Garfield* v. *Goldsby* it was said, "There is no place in our constitutional system for the exercise of arbitrary power, and if the Secretary has exceeded the authority conferred upon him by law, then there is power in the courts to restore the status of the parties aggrieved by such unwarranted action." These remarks apply with equal force to the facts of this case.

So we hold that in the present case the question of petitioner's eligibility to be elected to the office for which he was a candidate is not an issue. From this it necessarily follows that the second question should be returned by us unanswered. It also follows, we think, that the exhibits attached to the respondent's return and the allegations of the return which challenge petitioner's eligibility should be stricken as they do not relate to any issue before the court. Neither does the fact that criminal prosecutions are now pending against the respondent involving his refusal to issue the certificate

of election have any bearing upon any issue here involved, nor does that fact offer any excuse for refusing the writ as a matter of discretion. The objections made to the writ and set out in our statement of the proceedings are extremely technical and were properly overruled by the trial judge.

No valid reason having been shown why this case should not come within the rules of law announced we must conclude that it is the duty of the trial judge to issue the peremptory writ.

*E. M. Watson* and *A. Perry* (*Watson & Clemons, Perry & Matthewman* and *C. M. Hite* on the brief) for petitioners.

*D. L. Withington* and *C. H. Olson* (*Castle & Withington* and *Robertson & Olson* on the brief) for respondent.

OPINION OF COKE, C. J., DISSENTING IN PART AND CONCURRING IN PART.

In all that has been said by my associates in reference to reserved questions numbered 3 and 4 I fully concur. The alternative writ of mandamus should be made peremptory. The petitioners Kumalae and Pacheco having received the highest number of votes were each entitled to receive from the respondent Kalauokalani, the city and county clerk, a certificate of election as supervisor of the City and County of Honolulu. The duties of the clerk are purely ministerial and are so plainly expressed in section 1686 R. L. 1915 that it would seem there should be no honest difference of opinion in respect thereto. But in the face of his duties, clearly defined by statute, the clerk has attempted to clothe himself with judicial functions and arrogate to himself the right to sit in judgment and determine judicially whether the two petitioners are eligible to hold the offices to which they were elected by popular vote — an unwarranted assump-

tion of power which was clearly *ultra vires*—the usurpation of authority which calls for prompt intervention by judicial authority. The clerk has attached to his return certain communications. One of these is a letter addressed to the respondent Pacheco, signed by the attorney general of the Territory, holding that Pacheco was not eligible for election to, or service on, the board of supervisors of the City and County. Nothing, however, is contained in this communication having reference to the duties of the clerk of the City and County of Honolulu and the same is in no wise pertinent to the issue. Another communication is addressed to the clerk and signed by J. H. Fisher, who purports to write as a citizen of the City and County of Honolulu, demanding that certificates of election be issued to Edward P. Fogarty and William J. Sheldon. As neither Fogarty nor Sheldon was elected to the office for which certificates of election were demanded by Fisher this communication should have been ignored by the clerk. Another letter purporting to come from the city and county attorney is attached to the return. It advises the clerk that Pacheco and Kumalae are not eligible to hold the office of supervisors of the City and County of Honolulu and that certificates of election cannot be issued to them and further advises the clerk to issue certificates of election to Fogarty and Sheldon. This communication to the clerk counsels him to disregard his duties plainly prescribed by statute and is so palpably erroneous and so at variance with the provisions of the statute as to render it utterly worthless as a justification for the failure on his part to perform his duties as prescribed by law.

Upon the first reserved question, that is to say: "1. In this case does the following question arise, namely: was the petitioner, M. C. Pacheco, at the time of the election held on June 3, 1919, for supervisors of the City

and County of Honolulu ineligible for election as one of said supervisors by reason of the fact that at the election held on November 5, 1916, he was duly elected as a member of the senate of the legislature of the Territory of Hawaii to serve for the term of four years?" I am unable to agree with my associates. It was not within the province of the city and county clerk at the time demand was made upon him by the petitioners for the delivery to them of certificates of election to the office to which they were elected to question their eligibility, but after the cause reached the circuit court it was alleged in the return of the respondent, for reasons therein set forth at length, that the petitioners were ineligible for election. This became solely an issue of law, the facts being undisputed, and as long as the question was properly raised in the circuit court I think it became the duty of that court to determine this issue. If as a matter of law the petitioners are ineligible certificates of election would avail them nothing and the entire proceedings would be rendered abortive. If on the other hand petitioners are eligible why not so decide and dispose of the matter? I appreciate the force of what is said to the contrary and I fully recognize that as a general rule title to an office cannot be determined in a proceeding by mandamus, but this, like most rules, has its exceptions, and where as in this proceeding an issue of law has been properly raised questioning the eligibility of the petitioners to hold the office for which they are proceeding by mandamus to require the issuance of certificates of election that issue should as a matter of public policy, if for no other reason, be determined. As said in *Atchinson, County Judge, v. Lucas*, 83 Ky. 451, "When it appears that one is constitutionally ineligible to an office to which he has been elected his application for a writ of mandamus requiring the county judge to

permit him to qualify should be refused," and again in the same opinion, "It is well settled that the title to an office cannot be determined in a proceeding by mandamus. * * * This rule, however, must have its exceptions and in a case where the person applying is a citizen, has all the requisites of age, residence, etc., prescribed by the constitution and still not entitled to hold an office, why should the county judge permit her to qualify and enter upon the discharge of its duties?"

The effect of the majority opinion is to overrule *People* v. *Board of Canvassers,* 129 N. Y. 360, where it was held that a writ of mandamus should not be granted upon the application of an individual to compel the issuance of a certificate of election to one who has no right under the constitution to hold the office, and in that opinion the court proceeds to give utterance to the following strong language which is peculiarly applicable to the case at bar: "The appellants claim that he (appellee) was ineligible under this constitutional provision, and whether he was or not is the important question now to be determined. The question has attracted much public attention: it is fairly involved in this case and the interests of the public require that we should meet and determine it if it is within our judicial competency to do so. It is a pure legal question, depending upon undisputed facts, and it would be quite unfortunate to have this case go through all the courts and to leave the most important and vital matter in it undecided." It is inferred in the majority opinion that this court in *Harris* v. *Cooper,* 14 Haw. 145, and in *Kanealii* v. *Hardy,* 17 Haw. 1, overruled *People* v. *Board of Canvassers, supra.* Whether such is the case depends upon the individual interpretation of those opinions. Whatever might have been the intention of this court in that respect, in *Harris* v. *Cooper,* the opinion in *People* v. *Board of Canvassers*

was referred to as "perhaps the most instructive case that has come to our notice in this connection." And for a case holding contrary to *Harris* v. *Cooper* see *Wachter* v. *McEvoy,* 93 Atl. 987. I agree that the facts in *United States* v. *Fisher,* 222 U. S. 204, and *Duncan Townsite Co.* v. *Lane,* 245 U. S. 308, are dissimilar to those in the case before us, but it is nevertheless true that some of the principles and much that is said in those opinions do apply here.

I am therefore of the opinion that the question of the eligibility of Messrs. Pacheco and Kumalae is an issue under the pleadings that should be determined by the circuit court and that reserved question No. 1 should be answered in the affirmative.

This conclusion necessarily calls for an answer to reserved question No. 2, that is to say, "were the petitioners at the time of the election of June 3, 1919, eligible for election as supervisors of the City and County of Honolulu." This question in my opinion should also be answered in the affirmative.

A discussion of this subject would necessitate a lengthy opinion and the citation and review of many authorities. The views of a single justice of this court could not judicially determine the matter nor in any way be binding upon the court, hence I shall refrain from a discussion of the subject.